IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SOLDON WINTON                   :      CIVIL ACTION
                                :
         v.                     :
                                :
TRANS UNION, LLC, et al.        :      NO. 18-5587

MEMORANDUM

Bartle, J.                                          May 1, 2019

Plaintiff Soldon Winton ("Winton") brings this action for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., against defendants Trans Union, LLC, Department Stores National Bank ("DSNB"), First Premier Bank ("First Premier"), OneMain Financial, PAAC Transit Division Federal Credit Union, Pittsburgh Central Federal Credit Union, Synchrony Bank, and Citibank, N.A. ("Citibank").  Before the court are the motions of Citibank, DSNB, and First Premier to compel arbitration and to stay proceedings.

I

The facts alleged in the complaint are as follows. Winton previously held consumer credit card accounts issued by defendants Citibank, DSNB, and First Premier.[1]  On May 6, 2016, Winton filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Pennsylvania.  On

---

1. DSNB is a subsidiary of Citibank.

November 22, 2016, that court entered an order discharging Winton's debts to defendants and other creditors.

Sometime in 2018, Winton obtained his credit report from Trans Union. According to Winton, that report continued to include as outstanding his debts owed to defendants Citibank, DSNB, and First Premier without any notation that these debts had been discharged in bankruptcy. Winton characterizes these debts as "Errant Trade Lines." Thereafter, Winton submitted a letter to Trans Union disputing the Errant Trade Lines. Notwithstanding Winton's efforts, Trans Union and the three defendants noted above have failed to note the bankruptcy discharge and continue to report the debts as outstanding.

On April 12, 2019, defendants Citibank, DSNB, and First Premier filed their motions to compel arbitration. In support, they have submitted the contracts governing Winton's accounts. The relevant terms of Winton's account with DNSB, which was for a Macy's store credit card, are as follows:

> ***PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.***
>
> **THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE**

**INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

**Covered claims**

- *You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").

- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

. . . .

**Survival and Severability of Terms**

This arbitration provision shall survive changes in this Agreement and termination of the account or the relationship between you and us, <u>including the bankruptcy of any party</u> and any sale of your account, or amounts owed on your account, to another person or entity.

> If any part of this arbitration provision is
> deemed invalid or unenforceable, the other
> terms shall remain in force, except that there
> can be no arbitration of a class or
> representative Claim. This arbitration
> provision may not be amended, severed or
> waived, except as provided in this Agreement
> or in a written agreement between you and us.

(some emphasis added). Winton's agreement with Citibank for a Home Depot credit card account similarly provides:

> **ARBITRATION**
> *PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO INITIATE OR PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**
>
> **Agreement to Arbitrate**: Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> *Claims Covered*
> **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims,

cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. . . .

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

. . . .

**Survival and Severability of Terms**
This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) <u>the bankruptcy of any party</u>; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

(some emphasis added).

-5-

Finally, Winton's contract with First Premier, which governed two Mastercard credit card accounts Winton held with First Premier, provides:

> PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ALL DISPUTES ARISING OUT OF OR CONNECTED TO THIS CONTRACT SHALL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY AND/OR TO PARTICIPATE IN OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING, BUT NOT LIMITED TO, CLASS ACTIONS). EXCEPT AS OTHERWISE PROVIDED, ENTERING INTO THIS AGREEMENT CONSTITUTES A WAIVER OF YOUR RIGHT TO LITIGATE CLAIMS AND ALL OPPORTUNITY TO BE HEARD BY A JUDGE OR JURY.
>
> **Parties and Matters Subject to Arbitration**:
> For purposes of this Provision, "you" and "us" include the employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns of you and us. For purposes of this Provision, "Claim" means any claim, dispute or controversy by either you or us, arising out of or relating in any way to this Contract, this Provision (including claims regarding the applicability, enforceability or validity of this Provision), your Credit Account, any transaction on your Credit Account and our relationship. "Claim" also refers to any interaction or communication between you and us that occurred prior to or concurrent with entering into this Contract, including those now in existence, regardless of present knowledge. "Claim" shall refer to claims of every kind and nature, including, but not limited to, initial claims, counterclaims, cross-claims and third party claims. All Claims are subject to arbitration, regardless of legal theory and remedy sought, including,

> but not limited to, claims based in contract,
> tort (including negligence, intentional tort,
> fraud and fraud in the inducement), agency,
> statutory law (federal and state),
> administrative regulations or any other source
> of law (including equity).
>
> . . . .
>
> **Binding Effect and Survival**: You and we agree
> that, except as specifically provided for
> above, the arbitrator's decision will be final
> and binding on all parties subject to this
> Provision. This Provision is binding upon you,
> us, and the heirs, successors, assigns and
> related third parties of you and us. This
> Provision shall survive termination of your
> account, whether it be through voluntary
> payment of the debt in full by you, a legal
> proceeding initiated by us to collect a debt
> that you owe, <u>a bankruptcy by you</u> or a sale of
> your Credit Account by us.

II

With the enactment of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., Congress "expressed a strong federal policy in favor of resolving disputes through arbitration." <u>Flintkote Co. v. Aviva PLC</u>, 769 F.3d 215, 219 (3d Cir. 2014) (quoting <u>Century Indem. Co. v. Certain Underwriters at Lloyd's, London</u>, 584 F.3d 513, 522 (3d Cir. 2009)). The FAA provides that as a matter of federal law "[a] written provision" in a commercial contract showing an agreement to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Furthermore, under the FAA, a "party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003) (citing 9 U.S.C. §§ 3-4).

When a federal court addresses a motion to compel arbitration, it is "limited to a narrow scope of inquiry." Gay v. CreditInform, 511 F.3d 369, 386 (3d Cir. 2007) (internal quotation marks and citation omitted). The court may consider only "gateway matter[s]" regarding the question of arbitrability, such as whether an arbitration agreement encompasses a particular controversy or whether the arbitration agreement binds the parties. See, e.g., Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., 489 F.3d 580, 585 (3d Cir. 2007). "Thus, 'only when there is a question regarding whether the parties should be arbitrating at all' is a question of arbitrability raised for the court to resolve." Id. (quoting Dockser v. Schwartzberg, 433 F.3d 421, 426 (4th Cir. 2006)). Otherwise, "resolution by the arbitrator remains the presumptive rule." Id. (quoting Dockser, 433 F.3d at 426); see also In re Pharmacy Ben. Managers Antitrust Litig., 700 F.3d 109, 116 (3d Cir. 2012).

We must compel arbitration if: (1) a valid arbitration agreement exists between the parties; and (2) the

dispute falls within the scope of the agreement.  See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymoth, Inc., 473 U.S. 614, 626-28 (1985).  Here, there is no dispute that Winton entered into these arbitration agreements and that Winton's claims would be encompassed within the scope of the agreements.  Rather, Winton asserts that his bankruptcy rendered the agreements invalid and unenforceable.  He reasons that by virtue of his bankruptcy, he was discharged not only of the debts owed but also of all his obligations under the contracts, including the obligations to arbitrate any claims against defendants.

Winton's position is not supported by the law.  A bankruptcy discharge extinguishes only "the personal liability of the debtor."  Johnson v. Home State Bank, 501 U.S. 78, 83, (1991).  While the personal liability for the underlying debt is discharged, a bankruptcy discharge does not render a valid arbitration agreement unenforceable.  See, e.g., Crooks v. Wells Fargo Bank, N.A., 312 F. Supp. 3d 932, 938 (S.D. Cal. 2018); Delgado v. Ally Fin., Inc., No. 17-2189, 2018 WL 2128661, at *5 (S.D. Cal. May 8, 2018); Gadomski v. Wells Fargo Bank N.A., 281 F. Supp. 3d 1015, 1019 (E.D. Cal. 2018); McMahan v. Byrider Sales of Indiana S, LLC, No. 17-0064, 2017 WL 4077013, at *4 (W.D. Ky. Sept. 14, 2017); Mann v. Equifax Info. Servs., LLC, No. 12-14097, 2013 WL 3814257, at *3 (E.D. Mich. July 22, 2013);

Green Tree Servicing, LLC v. Brough, 930 N.E.2d 1238, 1243 (Ind. Ct. App. 2010).

This court lacks the discretion to deny enforcement of the arbitration clauses unless Winton can show that the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement of the arbitration agreements. See In re Mintze, 434 F.3d 222, 229 (3d Cir. 2006). Winton has not met this burden. The claims at issue here relate to defendants' allegedly inaccurate reporting of debts and not any attempt by defendants to collect a discharged debt. "[S]imply enforcing a provision which defines the venue for resolving the instant dispute does not deprive [plaintiff] of [a] 'fresh start' granted by the [B]ankruptcy [C]ode." Gadomski, 281 F. Supp. 3d at 1019 (quoting Mann, 2013 WL 3814257, at *9).

In any event, all three of the arbitration clauses at issue provide that the agreements will survive termination of or any changes in the account or the relationships between Winton and the defendants, including specifically the "bankruptcy of [Winton]." Thus, Winton's argument is also defeated by the plain language of the agreements.

Winton further asserts that this court should exercise its discretion to prevent the prejudice that would result from being compelled to arbitrate his dispute. Winton argues that he would be forced to litigate this matter on "two fronts" if he is

-10-

compelled to arbitrate his claims against these three defendants while litigating in this court his claims against the remainder of the defendants. Winton has failed to articulate any specific facts in support of his claim of hardship. The fact that Winton will be required to pursue his claims against different defendants in different fora is not grounds to deny the motions to compel arbitration. See CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 139 (3d Cir. 2004)

In the alternative, Winton urges that this court should order defendants to bear all costs of the arbitrations. A party seeking to "invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92 (2000). To meet this burden, a plaintiff must come forward with some evidence to show: (1) the projected fees that would apply to the arbitrations; and (2) an inability to pay those costs. Parilla v. IAP Worldwide Serv., 368 F.3d 269, 283–85 (3d Cir. 2004); Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 268–69 (3d Cir. 2003). Winton has not submitted to this court any evidence regarding what he would pay for the arbitrations or why he could not afford to pay those costs. As to First Premier, the arbitration agreement provides that First Premier will pay all expenses of arbitration to the extent that those expenses

exceed the amounts Winton would be required to pay to file a lawsuit in federal court.  In any event, Winton has not filed any motion seeking this relief, and a mere request in a brief is not sufficient.  See <u>Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.</u>, 26 F.3d 375, 398 (3d Cir. 1994).

Accordingly, the motions of defendants Citibank, DSNB, and First Premier to compel arbitration and to stay the claims pending against them in this action will be granted.