IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOLDON WINTON | : | CIVIL ACTION |
| v. | : | |
| TRANS UNION, LLC, et al. | : | NO. 18-5587 |

MEMORANDUM

Bartle, J.   August 26, 2019

Plaintiff Soldon Winton ("Winton") brings this action for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., against defendants Trans Union, LLC, Department Stores National Bank, First Premier Bank, OneMain Financial Group, LLC ("OneMain"), PAAC Transit Division Federal Credit Union, Pittsburgh Central Federal Credit Union, Synchrony Bank, and Citibank, N.A.  Before the court is the motion of OneMain to compel arbitration and to stay discovery.  Also before the court is the cross-motion of Winton to require OneMain to initiate arbitration and to bear all costs of arbitration.

I

The facts alleged in the complaint are as follows.  On September 15, 2015, Winton entered into a loan agreement with OneMain for a loan in the amount of $5,220.[1]  On May 6, 2016, Winton filed for Chapter 7 bankruptcy in the Bankruptcy Court for

---

1. Although the "Lender" under the Loan Agreement is identified as "Springleaf Financial Services of Pennsylvania, Inc.," OneMain is the current name of that entity.

the Western District of Pennsylvania.  On November 22, 2016, that court entered an order discharging Winton's debts to OneMain and other creditors.

Sometime in 2018, Winton obtained his credit report from Trans Union.  According to Winton, that report continued to include as outstanding his debt owed to OneMain without any notation that these debts had been discharged in bankruptcy.  Thereafter, Winton submitted a letter to Trans Union disputing what he characterizes as "Errant Trade Lines."  Notwithstanding Winton's efforts, Trans Union and OneMain have failed to note the bankruptcy discharge and continue to report the debts as outstanding.

On December 27, 2018, Winton filed this action against OneMain and the other defendants for violations of the FCRA.  On June 10, 2019, OneMain moved to compel arbitration and to stay this action pending arbitration.  Thereafter, Winton filed a response in opposition to OneMain's motion to compel arbitration or, in the alternative, a cross-motion to require OneMain to initiate arbitration and to bear all costs of arbitration.  After a status conference, the court granted the parties a period of time to engage in discovery related to the costs of arbitration and Winton's ability to pay such costs.  Thereafter, Winton filed a supplemental brief in support of his motion to require OneMain to initiate arbitration and to bear the costs of arbitration.

II

In support of its motion to compel arbitration, OneMain has submitted the agreement governing the loan made to Winton by OneMain. The relevant terms of the loan agreement are as follows:

> **C. ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL**
>
> **DESCRIPTION OF ARBITRATION.** Arbitration is a method of resolving claims and disputes between parties without having to file a lawsuit in court. It is a process in which both sides present their case to a neutral third person-the arbitrator-instead of a judge or jury, to resolve the dispute. **UNDER THIS AGREEMENT, BOTH LENDER AND I ARE VOLUNTARILY WAIVING ANY RIGHT TO A JURY TRIAL OR JUDGE TRIAL OF ALL CLAIMS AND DISPUTES COVERED BY THIS ARBITRATION AGREEMENT AND WAIVER OF JURY TRIAL ("this Arbitration Agreement") TO THE FULLEST EXTENT PERMITTED BY LAW.**
>
> **CLAIMS AND DISPUTES COVERED.** Except for those claims mentioned below under the heading "MATTERS NOT COVERED BY ARBITRATION," Lender and I agree that either party may elect to resolve all claims and disputes between us ("Covered Claims") by BINDING ARBITRATION. This includes, but is not limited to, all claims and disputes arising out of, in connection with, or relating to:
>
>> This Agreement with Lender; any previous retail credit agreement ("Retail Contract") assigned to Lender and any previous loan from or assigned to Lender, whether any of the foregoing may be open-end or closed-end; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender; any

insurance product, service contract, membership plan or warranty purchased in connection with this or any previous loan or Retail Contract made by or assigned to Lender; any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement (except as expressly set forth in subsection G. below) and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of this Arbitration Agreement and the Agreement; any negotiations between Lender and me; the closing, servicing, collecting, or enforcement of any transaction covered by this Arbitration Agreement; any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; any claim based on state or federal property laws; any claim based on the improper disclosure of any information protected under state or federal consumer privacy laws; any claim or dispute based on any alleged tort (wrong), including intentional torts; any claim for damages or attorneys' fees; and any claim for injunctive, declaratory, or equitable relief.

. . . .

**OTHER IMPORTANT AGREEMENTS**. Lender and I agree:

. . . .

G. This Arbitration Agreement applies even if my loan has been cancelled, changed, modified, refinanced, paid in full, charged

>off, or discharged or modified in
>bankruptcy.

With the enactment of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., Congress "expressed a strong federal policy in favor of resolving disputes through arbitration." Flintkote Co. v. Aviva PLC, 769 F.3d 215, 219 (3d Cir. 2014) (quoting Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009)). The FAA provides that as a matter of federal law "[a] written provision" in a commercial contract showing an agreement to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. Furthermore, under the FAA, a "party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003) (citing 9 U.S.C. §§ 3-4).

When a federal court addresses a motion to compel arbitration, it is "limited to a narrow scope of inquiry." Gay v. CreditInform, 511 F.3d 369, 386 (3d Cir. 2007) (internal quotation marks and citation omitted). The court may consider only "gateway matter[s]" regarding the question of arbitrability, such as whether an arbitration agreement

encompasses a particular controversy or whether the arbitration agreement binds the parties. See, e.g., Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., 489 F.3d 580, 585 (3d Cir. 2007). "Thus, 'only when there is a question regarding whether the parties should be arbitrating at all' is a question of arbitrability raised for the court to resolve." Id. (quoting Dockser v. Schwartzberg, 433 F.3d 421, 426 (4th Cir. 2006)). Otherwise, "resolution by the arbitrator remains the presumptive rule." Id. (quoting Dockser, 433 F.3d at 426); see also In re Pharmacy Ben. Managers Antitrust Litig., 700 F.3d 109, 116 (3d Cir. 2012).

We must compel arbitration if: (1) a valid arbitration agreement exists between the parties; and (2) the dispute falls within the scope of the agreement. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-28 (1985). Here, there is no dispute that Winton entered into this arbitration agreement and that Winton's claims would be encompassed within the scope of the agreement. Rather, Winton asserts that his bankruptcy rendered the agreement invalid and unenforceable. He reasons that by virtue of his bankruptcy, he was discharged not only of the debts owed but also of all his obligations under the loan agreement, including the obligations to arbitrate any claims against OneMain.

Winton's position is without merit. A bankruptcy discharge extinguishes only "the personal liability of the debtor." Johnson v. Home State Bank, 501 U.S. 78, 83, (1991). While the personal liability for the underlying debt is discharged, a bankruptcy discharge does not render a valid arbitration agreement unenforceable. See, e.g., Crooks v. Wells Fargo Bank, N.A., 312 F. Supp. 3d 932, 938 (S.D. Cal. 2018); Delgado v. Ally Fin., Inc., No. 17-2189, 2018 WL 2128661, at *5 (S.D. Cal. May 8, 2018); Gadomski v. Wells Fargo Bank N.A., 281 F. Supp. 3d 1015, 1019 (E.D. Cal. 2018); McMahan v. Byrider Sales of Indiana S, LLC, No. 17-64, 2017 WL 4077013, at *4 (W.D. Ky. Sept. 14, 2017); Mann v. Equifax Info. Servs., LLC, No. 12-14097, 2013 WL 3814257, at *3 (E.D. Mich. July 22, 2013); Green Tree Servicing, LLC v. Brough, 930 N.E.2d 1238, 1243 (Ind. Ct. App. 2010).

This court may not deny enforcement of the arbitration clauses unless Winton can show that the text, legislative history, or purpose of the Bankruptcy Code conflicts with the enforcement of the arbitration agreements. See In re Mintze, 434 F.3d 222, 229 (3d Cir. 2006). Winton has not met this burden. The claims at issue here relate to OneMain's allegedly inaccurate reporting of debts and not any attempt by OneMain to collect a discharged debt. "[S]imply enforcing a provision which defines the venue for resolving the instant dispute does

-7-

not deprive [plaintiff] of [a] 'fresh start' granted by the [B]ankruptcy [C]ode." Gadomski, 281 F. Supp. 3d at 1019 (quoting Mann, 2013 WL 3814257, at *9).

Winton further asserts that this court should exercise its discretion to prevent the prejudice that would result from being compelled to arbitrate his dispute. Winton argues that he would be forced to litigate this matter on "two fronts" if he is compelled to arbitrate his claims against OneMain while litigating in this court his claims against other defendants. Winton has failed to establish any specific facts in support of his claim of hardship. The fact that Winton will be required to pursue his claims against different defendants in different fora is not grounds to deny the motions to compel arbitration. See CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 139 (3d Cir. 2004).

Accordingly, the motion of defendant OneMain to compel arbitration will be granted. All claims against OneMain in this action will be stayed pending arbitration. See Alexander, 341 F.3d at 263.

III

We now turn to Winton's cross-motion to require OneMain to initiate arbitration and to bear all costs of arbitration. Arbitration is appropriate "[s]o long as the prospective litigant effectively may vindicate [his or her]

-8-

statutory cause of action in the arbitral forum." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991) (quoting Mitsubishi Motors Corp., 473 U.S. at 637). A party may seek to "invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive." Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92 (2000). To do so, a plaintiff must come forward with evidence to show: (1) the projected fees that would apply to the arbitration; and (2) an inability to pay those costs. Id.; see also Parilla v. IAP Worldwide Servs. VI, Inc., 368 F.3d 269, 283-85 (3d Cir. 2004); Alexander, 341 F.3d at 268-69. The party seeking to invalidate the arbitration agreement bears the burden of showing that arbitration would be prohibitively expensive. Green Tree Fin. Corp., 531 U.S. at 92.

As noted above, this court granted the parties a period of time to engage in discovery regarding the potential costs of arbitration and Winton's ability to pay those costs. Winton does not seek to void completely the loan agreement with OneMain but to require that OneMain initiate arbitration with the Judicial Arbitration and Mediation Services, Inc. ("JAMS") and bear all costs of the arbitration including any fees and

expenses payable to the arbitrator or the arbitration association as well as his attorneys' fees and costs.[2]

We begin with the language of the loan agreement. The agreement first states that the arbitration will be conducted by the American Arbitration Association ("AAA"). It then continues: "[i]n the event AAA is either unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim, or I object to the AAA for good cause, then Lender and I agree to submit all disputes to Judicial Arbitration and Mediation Services, Inc. ('JAMS')." The loan agreement further provides:

> **C. STARTING ARBITRATION.** If Lender or I elect to arbitrate a Covered Claim, the electing party must notify the other party in writing. . . . Except as described below, nothing in this Arbitration Agreement shall limit the arbitrator's ability to enforce any of my rights or impose any remedies available to me under any applicable consumer protection laws or regulations. . . .
>
> **D. COSTS OF ARBITRATION.** The AAA (or JAMS) charges certain fees in connection with arbitration proceedings. Except in Texas, I may have to bear some of these fees; however, if I am not able to pay such fees or think they are too high, Lender will consider any reasonable request to bear the cost. Lender will also bear any costs Lender is required to bear by law or by the terms of any other agreement with me. To the extent permitted by law, each party will

---

2. The loan agreement contains a severability clause which would permit us to find a provision of the agreement invalid or unenforceable without rendering the entire agreement invalid or unenforceable.

>               also pay for its own costs, including fees
>               for attorneys, experts, and witnesses,
>               unless otherwise provided by the terms of
>               any other agreement between the parties.

As stated above, the loan agreement provides that the parties will arbitrate any claim with AAA.  The parties may arbitrate with JAMS only if AAA is "unable, unwilling, or deemed not appropriate by a court to resolve a Covered Claim" or if Winton "object[s] to the AAA for good cause."  There is no indication that AAA is unable, unwilling, or would be inappropriate to arbitrate this dispute.  Winton has not offered good cause for his objection to AAA except to say that he "prefers JAMS because the selection of arbitrators to be chosen are of a very high caliber, including former Federal Judges."  We decline to contradict the plain language of the loan agreement by compelling the parties to arbitrate this dispute before JAMS.

We next consider Winton's request to require OneMain to initiate arbitration and to bear all costs.  Under the loan agreement, either party may elect to initiate arbitration.  Winton is responsible under the loan agreement for paying any fees charged to him by AAA.  However, the agreement provides that OneMain may consider a reasonable request to pay Winton's share of fees if Winton is unable to pay or he believes the fees are too high.

Under the AAA Consumer Arbitration rules, Winton would pay a $200 filing fee to initiate arbitration, unless the parties' agreement provides that he pay less. See American Arbitration Association, Consumer Arbitration Rules, 33-36 (Sept. 2018), https://www.adr.org/sites/default/files/Consumer_Rules_Web_0.pdf All other arbitration expenses, including case management fees, the arbitrator's compensation and expenses, hearing fees, and any rental fees for hearing rooms would be borne by OneMain. See id. If OneMain initiates arbitration, Winton would pay nothing.[3] See id. Accordingly, Winton will be responsible to the AAA for a $200 filing fee if he initiates arbitration unless OneMain elects to cover this expense because of his inability to pay.

Under 28 U.S.C. § 1915, a district court may authorize the commencement of a civil suit without prepayment of fees by an individual who submits an affidavit demonstrating that he is

---

3. In support of his motion, Winton has projected that he would be required to bear approximately $20,000 to $25,000 in costs and fees for the arbitration, including $15,000 to $20,000 in attorneys' fees, $1,500 in arbitration filing fees, and $5,000 to retain the arbitrator. To substantiate this estimate, Winton has submitted an affidavit from counsel stating merely that JAMS requires a $1,500 filing fee for a consumer arbitration and "further fees based upon the choice of arbitrator." Moreover, his estimate regarding his share of arbitration fees is contradicted by the plain language of the loan agreement and the AAA's Consumer Arbitration Rules. Accordingly, we will disregard Winton's calculation.

unable to pay such fees.  Similarly, Rule 4 of the AAA Consumer Arbitration Rules further provides that "[t]he AAA may, in the event of the consumer's extreme hardship, defer or reduce the consumer's administrative fees," which would include the $200 filing fee.

Winton has submitted evidence that his fixed expenses greatly exceed his income and thus he is unable to pay this fee. He reports that he has a current total monthly income of $3,900, which consists of social security benefits and a pension. While he has not provided any specifics, he states that he has "fixed monthly expenditures" of $5,998.  Although his affidavit is somewhat conclusory, OneMain has not challenged this evidence.

As noted above, the FAA "establishes a strong federal policy in favor of the resolution of disputes through arbitration." Alexander, 341 F.3d at 264 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Under the FAA, arbitration agreements are "enforceable to the same extent as other contracts." Id. (internal citation omitted); see also 9 U.S.C. § 2.  Applying the relevant state contract law, a court may hold that a provision in an arbitration agreement "that makes the arbitral forum prohibitively expensive for a weaker party is unconscionable," given the party's financial situation and the expected costs of arbitration. Parilla, 368 F.3d at 276, 283-84; see also

-13-

Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 217 (3d Cir. 2003); Blair v. Scott Specialty Gases, 283 F.3d 595, 607-08 (3d Cir. 2002). For example, in Parilla, our Court of Appeals held that a "loser pays arbitral costs" provision of an arbitration agreement would be unconscionable under the relevant state law if the plaintiff could establish her inability to pay the costs of arbitration and thus remanded for further proceedings. 285 F.3d at 283-85.

Given Winton's stated income of only $46,800 annually and the significant disparity between that income and his reported fixed expenses, it is possible that a requirement that Winton pay even $200 would be unconscionable under the relevant state law which, in this case, is the law of Pennsylvania. However, we decline to reach this issue on the record before us. As stated above, the loan agreement provides that Winton may request that OneMain pay the $200 filing fee on his behalf if he is unable or if he believes it is too high. There is no indication in the record that Winton has actually made this request. Furthermore, the AAA Rules provide that Winton may seek a reduction or deferment of the filing fee in the event of extreme hardship. Winton should explore these avenues before seeking relief in this court. See Blair, 283 F.3d at 610. If OneMain does not agree to pay the fee or AAA does not grant him

relief on the fee, he may return to this court prior to arbitration for further proceedings.

Winton also requests that we order OneMain to pay the attorneys' fees and other costs he may incur in connection with the arbitration.  The loan agreement provides that the parties will bear their own attorneys' fees and costs to the extent permitted by law.  However, the agreement further states that the arbitrator may award to Winton any remedies available under applicable consumer protection laws or regulations.  The statute under which Winton has brought suit, the FCRA, states that a court may award to a prevailing plaintiff the costs of the action together with reasonable attorney's fees.  See 15 U.S.C. §§ 1681n & 1681o.  Thus, regardless of whether Winton's claims are heard in this court or in arbitration, he would be required to bear his own attorneys' fees and costs but may be entitled to recover these expenditures should he prevail.  We see no basis to rewrite the parties' agreement and place Winton in a better position than he would have in the federal court.  We therefore decline to order OneMain to pay Winton's attorneys' fees and costs in connection with the arbitration.

Accordingly, the cross-motion of Winton to require OneMain to initiate arbitration and to bear all costs of arbitration will be denied without prejudice to the extent it

concerns the payment of the $200 filing fee charged by AAA. The motion will otherwise be denied with prejudice.